## UNITED STATES v. ONE DODGE ROADSTER (BREAUX, Intervener).

District Court, W. D. Louisiana, Opelousas Division.    September 27, 1927.

No. 1642.

1. Intoxicating liquors ⬤⟶246—That prohibition agent accompanied one borrowing automobile held not to defeat forfeiture for subsequent transportation of whisky by them (26 USCA §§ 1181, 1182).

That prohibition agent, with another, obtained permission to use automobile, which they subsequently loaded with whisky and carried to another place where it was seized, *held*, not to defeat forfeiture thereof under Rev. St. § 3450 (26 USCA §§ 1181, 1182; Comp. St. § 6352), on ground of entrapment, where car was borrowed by such agent's companion and had been used on previous occasions for transporting whisky by persons charged with violating prohibition laws.

2. Intoxicating liquors ⬤⟶246—Automobile, controlled and constantly used by minor owner's parents, held subject to forfeiture for transportation of whisky by one borrowing it from owner's father (26 USCA §§ 1181, 1182).

Automobile under control and dominion of, and constantly used by, minor owner's parents, in many instances for violating prohibition law, *held* subject to forfeiture, under Rev. St. § 3450 (26 USCA §§ 1181, 1182; Comp. St. § 6352), though such owner was not actually present when car was delivered by his father to person using it for such purpose, and did not give his formal consent to such use.

Proceeding by the United States to forfeit one Dodge roadster, in which Lawrence Breaux intervened as claimant. Judgment for plaintiff.

Judgment affirmed 25 F.(2d) 913.

Frank O. Chavez, of Shreveport, La., for the United States.

T. A. Edwards, of Lake Charles, La., for defendant.

DAWKINS, District Judge. This is a proceeding under section 3450 of the United States Revised Statutes (26 USCA §§ 1181, 1182; Comp. St. § 6352) to forfeit an automobile seized while containing several gallons of whisky.

Intervener claims ownership of the car, and contends that it should be released to him because he had no knowledge of its being used for said illegal purpose.

The facts, as I find them, are as follows:

Intervener is a minor about 18 years of age, the son of Bill and Edna Breaux, both of whom had on previous occasions been charged and convicted of violating state and national prohibition laws. The car license issued by the state was in the name of intervener. He had no individual means, but claims to have received small sums of "spending money" from time to time for acting as altar boy to a priest of the Catholic church, and at other times from his father, Bill Breaux, which he used in buying the car. There is other evidence tending to show that the car was registered in the name of the minor because of the trouble previously had by the parents with the prohibition law, so that he might claim it if seized.

On the night of November 27, 1926, A. B. Bowie, now under indictment with several other persons, both in the Opelousas and Lake Charles divisions of this court, for conspiracy to violate the prohibition law (27 USCA) went with Prohibition Agent Lambert to the home of Gaston Touchet, where they found Bill Breaux and obtained permission from him to use the car, stating that a trip was to be made to Baton Rouge, La. The intervener at that time had driven the car to a picture show in the town of Rayme, where he lived with his parents, and, when it was returned to his home, Bowie, Lambert and another agent named Wilder, proceeded with Bill Breaux, the father, to his residence, where the car was obtained in the presence of the mother, and, according to the two agents, also of the intervener, it was taken to Arnaudville by Bowie and Lambert, loaded with twenty odd gallons of whisky, and carried to Shreveport, La., where it was seized. Bill Breaux is dead, and Bowie declined to testify on behalf of the intervener, upon the ground that he would incriminate himself. There is some evidence tending to show that the intervener, when he wanted to use the car, would get permission from his parents, although he explains that the permission was to go to places which he wished to visit instead of for the use of the car. It is also testified to by him that on Sunday morning November 28th, he discovered that the car was not in the garage, that he reported it to his father, and the latter said nothing about having loaned it to Bowie, and allowed him to report it to the sheriff as stolen. This is in a measure corroborated by the deputy sheriff, who says that young Breaux came to him about 6:30 or 7 o'clock of the morning of the 28th and asked that he try to locate the car.

[1] Two contentions are made by counsel for intervener, to wit, first, that the prohibition agent, Lambert, resorted to methods in obtaining the car which would have the effect of entrapment; and, secondly, that the intervener is an innocent person, occupying the position of one whose car had been stolen, a point reserved by the Supreme Court

of the United States in the Goldsmith Case, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376. However, I am convinced that there was nothing in the case justifying the application of the doctrines of entrapment. It was conclusively shown that this same car had been used by the mother and father of this intervener on previous occasions for transporting large quantities of whisky, and they, as above stated, had been charged with violating the prohibition laws; so that there was a reasonable basis for believing that the car was already being used for that illegal purpose. Lambert, with the knowledge of his superior officer, was engaged in an effort to run down numerous violators of the prohibition law in the vicinity of Arnaudville and Breaux Bridge, La., and had evidently induced Bowie to believe that he was corrupt for the purpose of catching him and others. As the result of his efforts and those of other agents, a large number of alleged violators are now under indictment awaiting trial in both the Opelousas and Lake Charles divisions. While Lambert was present, I think it appears from the evidence that Bowie was the man who borrowed the car, and it cannot be said that it was the act of the former in a manner to affect the rights of the government.

[2] Conceding that intervener was not actually present when the car was delivered to Bowie, and that he did not give his formal consent for the use thereof, it was under the control and dominion of his parents, constantly being used by them, in many instances for the violation of the prohibition law, and I think subject to forfeiture under the facts above set out. Goldsmith v. U. S., 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376; U. S. v. 1 Ford Coupé, 272 U. S. 321, 47 S. Ct. page 154, 71 L. Ed. 279, 47 A. L. R. 1025.

For the reasons assigned, there should be judgment for the government forfeiting the car in question and rejecting the demand of intervener.