**UNITED STATES of America,**

v.

**Francis AMBROSIO, Anthony Farino, Jack Farino, Amfar Asphalt Corporation, Herbert Hochreiter, Lizza Industries, Inc., James J. Pratt and Pratt & Pratt, Inc., Defendants.**

**No. CR 83–00159(S).**

United States District Court,
E.D. New York.

Oct. 31, 1983.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Ronald DePetris and Marion J. Bachrach, Asst. U.S. Attys., Brooklyn, N.Y., for U.S.

Saxe, Bacon & Bolan, P.C., New York City, for defendants Herbert Hochreiter and Lizza Industries, Inc.; Michael Rosen, New York City, of counsel.

*Memorandum of Decision and Order*

MISHLER, District Judge.

Defendant Herbert Hochreiter is charged in Count 98 of the indictment with a RICO violation. 18 U.S.C. §§ 1962–63. The indictment further charges that "[a]s a result of this violation as alleged in this count, the ownership interests of the defendant Herbert Hochreiter in Lizza Industries, Inc., namely, 30%, are, to their full extent, subject to forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 1963(a)." A restraining order was granted *ex parte* on July 10, 1983 pursuant to 18 U.S.C. § 1963(b).[1]

The order enjoined Hochreiter and Lizza Industries, Inc. ("Lizza") from transferring or depleting a substantial portion of Lizza's assets except upon thirty days advance notice to the United States Attorney. On July 27, 1983, the court vacated the restraining order against Lizza because Lizza was not charged under 18 U.S.C. §§ 1962–63 and its property was not subject to forfeiture.[2] The United States now moves to reinstate the restraining order against Lizza. The government argues that a restraining order is necessary because defendant Hochreiter's "interest" in Lizza is subject to forfeiture and the value of that "interest" is subject to preservation of Lizza's assets.[3] This case poses the difficult question of the extent a court may encumber the property of an "innocent" third party in order to preserve the "interests" of the government in the defendant's potentially forfeitable property.

DISCUSSION

Title IX of the Organized Crime Control Act of 1970, the Racketeer Influenced and Corrupt Organizations Act (RICO)[4] was "enacted in response to what Congress perceived as the threat to the American economy from the unchecked growth of organized crime." *United States v. Huber*, 603 F.2d 387 (2d Cir.1979) (citing *United States v. Parness*, 503 F.2d 430, 439 (2d Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975)), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 758 (1980). "The purpose of RICO is to enable law enforcement authorities not only to punish individual criminals, but to separate the corrupt interstate enterprises in which they were involved from their criminal organizations so that prosecutions will do more than merely impose a 'compulsory retirement and promotion system as new people step forward to take the place of those convicted.'" *Huber, supra,* at 392 (quoting S.Rep. 91–617, 91st Cong., 1st Sess. 78 (1969)).

In addition to the traditional penalties of fine and incarceration,[5] RICO provides that the convicted defendant forfeit to the United States

---

1. Section 1963(b) provides that:

   In any action brought by the United States under this section, the district courts of the United States shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including, but not limited to, the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as it shall deem proper. 18 U.S.C. § 1963(b).

2. We relied upon *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir.1930) in which Judge Hand wrote:

   [N]o court can make a decree which will bind any one but a party.... If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it.... [I]ts jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court.
   *Id.* at 832–33.

3. The government's concerns are represented by an example stated in their brief:

   Lizza Industries, Inc. could transfer 70% of its assets to Carl Lizza (a 70% stockholder) and 30% of its assets to a creditor of Herbert Hochreiter without any participation by Hochreiter. Such a transaction would defeat the purpose of the forfeiture provisions just as much as a direct transfer by Hochreiter of his 30% ownership interest to a nominee.
   (Br. at 4).

4. 18 U.S.C. §§ 1961–68 (1976).

5. Section 1963(a) provides a maximum fine of $25,000 and a maximum prison sentence of 20 years.

(1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

18 U.S.C. § 1963(a).

This forfeiture provision was arguably designed primarily to separate the convicted racketeer from the enterprise. *See generally,* Taylor, Forfeitures Under 18 U.S.C. § 1963—*RICO's Most Powerful Weapon,* 17 Am.Crim.L.Rev. 379 (1980) (hereinafter cited as Taylor). A hotly debated issue is whether RICO's forfeiture provision was intended only to separate the defendant from the enterprise or whether it was intended to be used also as a criminal penalty. *Compare United States v. Marubeni American Corp.,* 611 F.2d 763 (9th Cir. 1980), *with United States v. Martino,* 681 F.2d 952 (5th Cir.1982). The government argues here that if Hochreiter is convicted of violating RICO, then Hochreiter will have to forfeit his 30% ownership interests in Lizza. The government is equating RICO's "interest" provision with "assets" of the corporation. In contrast, the defendants are equating "interest" with ownership of the stock in the corporation. The definition of "interest" is a difficult question, one that the U.S. Court of Appeals for the Second Circuit declined to decide in *United States v. Walsh,* 700 F.2d 846, 857 (2d Cir.1983) and which is presently before the United States Supreme Court in *United States v. Martino,* 681 F.2d 952 (5th Cir. 1982), *cert. granted sub nom. Russello v. United States,* —— U.S. ——, 103 S.Ct. 721, 74 L.Ed.2d 948 (1983) (oral argument heard on October 5, 1983). We do not decide this difficult question because assuming *arguendo* the government has an interest in 30% of the assets of Lizza, a restraining order prohibiting the transfer or depletion of its assets would deprive Lizza of its property without due process of law.[6]

### I. *Due Process and Forfeiture Proceeding*

■ Due process requirements in in personam forfeiture proceedings differ from due process requirements in in rem forfeiture proceedings. An in rem forfeiture involves relinquishment of contraband or property which has been used in the commission of a criminal offense. Note, *Rico Forfeitures and the Rights of Innocent Third Parties,* 18 Calif.U.L.Rev. 345, 349 (1982) (hereinafter cited as *Rights of Innocent Parties* ). Federal and state statutes authorize such forfeitures. *See, e.g.,* 18 U.S.C. § 1082 (1976) (illegal gambling); 18 U.S.C. § 3612 (illegal bribes); 18 U.S.C. § 3615 (liquor violations); 49 U.S.C. § 782 (narcotics violations). Almost any instrumentality used in a criminal offense may be subject to an in rem forfeiture. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974) (yacht used to transport controlled substances forfeited). Indeed, in rem forfeitures have become established in criminal jurisprudence. *See id.; Goldsmith-Grant Co. v. United States,* 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921).

■ In rem forfeitures have been challenged under the due process clause of the fifth amendment. The owners have claimed that they are being deprived of their property without committing any wrongdoing. *See, e.g., Calero-Toledo, supra,* 416 U.S. at 683, 94 S.Ct. at 2092. In an in rem proceeding, however, the instrumentality, and not the owner of the property, is considered the offender. *Goldsmith-Grant, supra,* 254 U.S. at 511, 41 S.Ct. at 191. Thus, the penalty is imposed directly upon the *thing* because it is guilty. This is "the only adequate means of suppressing the offense or wrong, or insuring an indemnity to an injured party." *United States v. Brig.,* 43 U.S. 210, 233 (2 How.) (1844).

---

**6.** "No person shall ... be deprived of life, liberty, or *property* without due process of law ..."

U.S. Const. amend. V (emphasis added).

The Supreme Court has upheld in rem forfeitures by tracing its roots to Judeo-Christian practices. *E.g., Calero-Toledo, supra,* 416 U.S. at 680, 94 S.Ct. at 2090.

"In an in rem proceeding, because the property subject to forfeiture is itself considered offensive to the law, the owner is considered a third party." *Rights of Innocent Third Parties, supra,* at 350. The owner's innocence is not a defense to the in rem forfeiture, *Calero-Toledo, supra,* at 680, 94 S.Ct. at 2090, and the claim of a due process violation will fail. *Id.* "Despite the proliferation of *in rem* forfeiture enactments, the innocence of the owner of the property subject to forfeiture has almost uniformly been rejected as a defense." *Calero-Toledo, supra,* at 683, 94 S.Ct. at 2092.[7]

In contrast to an in rem forfeiture, RICO forfeitures are in personam and are imposed directly on convicted persons.[8] "Forfeiture is a criminal penalty, imposed along with fines and imprisonment under the penal section of RICO. Unlike an in rem forfeiture in which the property itself is the offender, in an in personam forfeiture, the interest subject to the proceeding is the defendant's *proprietary* interest in the enterprise. Accordingly, the property must be before the court before the government may constitutionally deprive him of that interest. Before a person's interest in an enterprise can be declared forfeited under RICO, that person must be convicted of an offense prohibited by RICO. Therefore, unlike an in rem proceeding, the guilt or innocence of the owner of the interest subject to forfeiture is crucial in an in personam forfeiture under RICO." *Rights of Innocent Third Parties, supra* at 350–51.

7. "However, if the owner of the property has exercised all reasonable care to prevent the use of his property in the commission of a crime, this will be a defense to an in rem forfeiture." *Rights of Innocent Third Parties, supra,* at 350 n. 57. *See also Calero-Toledo, supra,* at 683, 94 S.Ct. at 2092.

8. 18 U.S.C. § 1963(a) (1976).
This subsection states in pertinent part:

The government is not contending that Lizza will have to forfeit its assets if Hochreiter is convicted of the RICO charges. It merely requests that Lizza be restrained from transferring its assets without providing prior notice to the government. But the government's request for a restraining order against Lizza could also deprive Lizza of property without due process of law because Lizza is being restricted in its ability to use its property and Lizza is not before the court in a forfeiture proceeding. This is clarified by an examination of RICO's restraining order provision and its use against innocent third parties.

## II. *Restraining Orders Under RICO*

Section 1963(b) provides:

In any action brought by the United States under this section, the district courts of the United States shall have jurisdiction to enter such restraining orders or prohibitions, or take such other actions, including, but not limited to, the acceptance of satisfactory performance bonds, *in connection with any property or other interest subject to forfeiture* under this section, as it shall deem proper.

18 U.S.C. § 1963(b) (1976) (emphasis added).

The court has broad authority to restrain transfers of property which are subject to forfeiture proceedings under § 1963. The transfer of Hochreiter's "interest" in the enterprise can thus be restrained. But Lizza's property is not subject to forfeiture proceedings and cannot be restrained. The in personam forfeiture

"*Whoever violates* any provision of Section 1962 of this chapter...." (emphasis added). "The statute is set forth in terms of violations committed by defendants. On the other hand, an in rem forfeiture statute would be couched in terms of articles of property. A typical in rem forfeiture statute might use language to the effect that 'Property used in the commission of a violation....'" *Rights of Innocent Third Parties, supra,* at 350 n. 62.

proceeding against Hochreiter cannot be bootstrapped to reach Lizza.[9]

The government cites *United States v. L'Hoste,* 609 F.2d 796, 811 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980) and *United States v. Long,* 654 F.2d 911, 916–17 (3d Cir.1981) to support its assertion of the court's jurisdiction to impose a restraining order against Lizza. In *L'Hoste* the Fifth Circuit held that section 1963(b) requires mandatory forfeiture upon conviction, 609 F.2d at 875. The property subject to forfeiture was the defendant's stock ownership in the enterprise which was held as community property with his wife, who was an innocent third party. The court held that it was the responsibility of the United States to alleviate any hardship suffered by Mrs. L'Hoste. *Id.* at 812. *L'Hoste* is distinguishable because the property subject to forfeiture was jointly owned. In effect, it was an in rem proceeding and detriment suffered by the innocent third party did not violate due process.

Similarly, in *United States v. Long,* 654 F.2d 911 (3d Cir.1981) the government sought to restrain Long's attorneys from transferring an airplane which they had received from their client in exchange for legal services. Finding that the airplane was subject to forfeiture under 21 U.S.C. § 848(a)(2) because it had been purchased with profits derived from a "continuing criminal enterprise," 21 U.S.C. § 848(b), the district court issued the requested restraining order. On appeal, Long's attorneys argued that forfeiture applies only to criminally derived profits that are in the hands of the defendant. The court of appeals disagreed and held that since Long's attorneys could be required to forfeit the airplane, they could be restrained from transferring the airplane prior to an ultimate determination of the forfeiture issue. The

rationale advanced by the court was that a contrary holding would make it too easy for defendants to defeat forfeiture by preindictment transfer of property subject to forfeiture. *Id.* at 916.

There is an important distinction between *Long* and the instant case. Although the court in *Long* characterized § 848(a)(2) as an in personam forfeiture provision, its holding that the airplane retained its criminal taint in the hands of Long's attorneys seemed to be based on an in rem view that the airplane was itself subject to forfeiture. The attorneys' ownership of the forfeitable airplane established the basis for jurisdiction over the non party. By contrast, the government here seeks to restrain Lizza from transferring its assets which are not subject to forfeiture. Thus, the restraining order requested here is truly an in personam order against Lizza rather than an in rem order directed to Lizza's assets.

Thus, a restraining order under § 1963 can be imposed only upon a party before the court. As Judge Learned Hand noted, a court's jurisdiction "is limited to those over whom it gets personal service, and who therefore can have their day in court." 42 F.2d 832, 832–33 (2d Cir.1930). It is true that Lizza had adequate notice of the government's request for a restraining order, *see Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972) ("notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") because Hochreiter and Lizza are represented by the same attorney who responded for both clients. It is also true that Lizza is charged with violations of mail fraud. But Lizza is not charged with RICO violations and we hold that they are not before the court with respect to Hochreiter's alleged RICO violations.[10]

---

**9.** We do not accept the government's hypothetical expressed in footnote 3. It is purely speculative and no evidence has been proffered to support its likelihood. Even if it was likely we do not think it sufficient justification to impose the burden requested by the government.

**10.** We also do not accept the government's argument that because Lizza is before the court on mail fraud charges the court has ancillary jurisdiction to impose the requested restraints on Lizza. Ancillary jurisdiction is not appropriate where it would deprive a party of property without due process of law. The cases cited by

We hold that the innocence of a third party in an *in personam* forfeiture proceeding is a valid defense. A restraining order against Lizza would deprive it of its property without due process of law.

Finally, the Supreme Court stated in *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) that "the power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed." *Id.* at 172, 98 S.Ct. at 372. *See also United States v. Zang*, 703 F.2d 1186, 1195 (10th Cir.1982) (untainted partner should be protected). We hold that a restraining order prohibiting Lizza from transferring its assets is an unreasonable burden and we decline to impose it. Accordingly, the motion to amend the restraining order is denied, and it is

SO ORDERED.

the government concern in rem situations and are not appropriate to an in personam situation including the rights of innocent third parties.