# UNITED STATES v. ONE FORD COUPÉ AUTOMOBILE et al.

District Court, D. Idaho, S. D. July 23, 1927.

## No. 1311.

1. **Internal revenue ⚖=46—Automobile containing liquor should not be forfeited where owner did not use it unlawfully and had no knowledge of use by another (26 USCA §§ 1181, 1182).**

In libel against automobile containing moonshine whisky, forfeiture of car should not be decreed where owner did not use it, consent to its use, or have knowledge thereof, in violation of Rev. St. § 3450 (26 USCA §§ 1181, 1182 [Comp. St. § 6352]).

2. **Internal revenue ⚖=46—Evidence should be clear and convincing to justify forfeiture of automobile under 26 USCA §§ 1181, 1182.**

Evidence should be clear and convincing and not founded on mere suspicion, before forfeiture of automobile under Rev. St. § 3450 (26 USCA §§ 1181, 1182 [Comp. St. § 6352]) should be declared.

3. **Internal revenue ⚖=46—In libel against automobile containing moonshine whisky, evidence held to warrant return of car to owner who had no knowledge of unlawful use.**

In libel against automobile in which moonshine whisky was concealed, evidence held to warrant return of car to owner on ground that she had no knowledge of its unlawful use.

Libel by the United States against one Ford coupé automobile, 1926 model, motor No. 15330208, Idaho 1926 license No. 12004, and six gallons of moonshine whisky. Dismissed as to the automobile.

H. E. Ray, U. S. Dist. Atty., and Sam S. Griffin, Asst. U. S. Dist. Atty., both of Boise, Idaho.

Delana & Delana, of Boise, Idaho, for defendants.

CAVANAH, District Judge. On January 22, 1927, the government filed a libel against one Ford coupé automobile, in which it is charged that on January 13, 1927, William Stoner and Elmer Stoner removed by means of and deposited and concealed within said Ford automobile six gallons of moonshine whisky, contained in one five-gallon keg and one gallon jug, which were subject to the payment of a tax to the United States under the Internal Revenue Law, said tax having been due and unpaid to the United States, and the removal, deposit, and concealment of said whisky, and the use of said automobile for that purpose were with the intent to defraud the United States of said tax, and that by reason thereof said automobile and whisky were seized and taken possession of by a federal agent. The government urges that, because of these facts set forth in the libel, the automobile is subject to forfeiture to the United States as provided in section 3450, Revised Statutes (26 USCA §§ 1181, 1182 [Comp. St. § 6352]).

On February 19, 1927, Mrs. Grace Gaylor Rose, pursuant to permission granted, filed an answer to the libel, in which she alleged that she was the owner of the automobile and did not at any time give either of the Stoners permission or right to use it for any purpose, and that, if the automobile was used by them as charged in the libel, it was without her knowledge and without her permission or consent and against her will, and was as to her a trespass. Upon this issue of fact, which it seems to me to be the controlling question in the case, considerable evidence was taken, which disclosed that, about 12:30 a. m., January 13, 1927, in Boise, while the automobile was parked on the street in front of the residence of Mrs. Rose, where she had left it a short time before, it was seized by a federal prohibition agent and a police officer of the city, who found Elmer Stoner in the car with a gallon jug of liquor on the seat beside him, and a pint of liquor in his

pocket. William Stoner at the time was at the side of the car, with a five-gallon keg of liquor sitting on the running board. This was all of the liquor found deposited or concealed in the car. At the time Elmer Stoner was first seen by the officers he was attempting to fit some keys in and unlock the switch of the car, which keys were discovered to be those to his own car and would not unlock this one. One of the officers then asked Mrs. Rose for the keys to the car, and she went into her house and brought them to him. The car was then unlocked by the officer and taken to the police station, where Elmer Stoner stated that he thought he was depositing the liquor in his own car. It appears that the Stoners were somewhat intoxicated at the time from the use of liquor that had been brought to the place by other parties, and stated that the liquor found in the car had been taken by them from the premises, and belonged, they thought, to one Jess Mitchell. The testimony of the witnesses Paris, federal prohibition agent, and Policeman Condit, corroborates the evidence of the intervener and the two Stoners in regard to Elmer Stoner's endeavoring to unlock the car with his own keys, and the necessity of the officers' getting the keys to the car from intervener, which were then in her house. Both the Stoners and Mrs. Rose agree that she had not granted to them permission to use her car on that or any other occasion. Further evidence was received as to those present that night indulging in the use of liquor, that they had the reputation of having been engaged in the sale of liquor, and that the reputation of the car in question was that it had been used in transporting liquor. There was a further statement that Mrs. Rose had on that day taken a trip over on Snake river in this car, and had returned to her home about 6:30 p. m., but it does not appear that she brought in the car with her at that or any other time liquor to her home. This, in substance, is the testimony offered by both the government and intervener.

The defense of unlawful user by a trespasser is urged by intervener, and, if the evidence bears that out, there can be no question but that the automobile in the present case should not be forfeited to the government under section 3450. The undisputed evidence leads one to the conclusion that intervener, the owner of the automobile, did not consent to or have knowledge of the Stoners' attempting to use her car for the purposes charged in the libel, as there was not a word said at the trial that she had either placed the liquor in the car or knew that the Stoners had done so. The most convincing fact of her lack of such knowledge and consent is the evidence of all of the witnesses who were present when the car was seized that she had the car locked and retained the keys in her house, while the Stoners, who were intoxicated, attempted to unlock it with the keys to their own car. If she were a party to the transaction or consented to the Stoners' using her car as charged, it would have been the natural thing for her to have delivered the keys to them, so that they could have unlocked the car and used it. But this she did not do, as the officers had to get the keys from her after they had arrested the Stoners, who were unable to move the car. This occurs to me to be a situation where the Stoners and others went to the home of intervener, and were indulging in and using liquor that had been placed on the premises by some one, and the Stoners, after finding the liquor outside of the house and when in an intoxicated condition, attempted to leave the premises with the liquor and use the car of intervener without obtaining her consent.

[1-3] The authorities seem to recognize that in an action of this kind a forfeiture of a car should not be decreed where it appears that the owner did not use it, or consent to its use, or have knowledge that another had used it, in violation of section 3450. The conduct of the Stoners in placing the liquor in the car under this evidence was that of a trespasser, and such a defense is good in law. United States v. One Buick Roadster et al. (D. C.) 280 F. 517; United States v. Two Barrels of Whisky (C. C. A.) 96 F. 479; United States v. Almeida (C. C. A.) 9 F.(2d) 15. It is insisted by the government that, after considering all of the circumstances in the case, the court should infer that intervener either consented to or had knowledge that the Stoners were using her car as charged. To do this I would have to decide the case upon a mere suspicion, in the face of direct proof, as above related, to the effect that the opposite conclusion should be reached. The evidence should be clear and convincing, under the decisions, and not founded on mere suspicion, before a forfeiture of one's property should be declared. I would not be justified in decreeing a forfeiture of this car upon the contention that, because there is evidence that the parties who gathered at intervener's house were drinking liquor, and had the reputation of selling liquor, and because the car had the reputation of having been used in transport-

ing liquor, in the face of direct proof that she did not know of or consent to her car being used by the Stoners, or either of them, at the time charged.

The libel in respect to the automobile is dismissed, and the car should be returned to intervener.